| | |
|---|---|
| **FATIMA WARREN,** | |
| **Plaintiff,** | |
| **V.** | **Civil Action No. 5-16-CV-00140-DCR** |
| **LEXINGTON-FAYETTE URBAN COUNTY GOVERNMENT POLICE DEPARTMENT, et al.** | |
| | **RESPONSE TO JOINT MOTION FOR DISMISSAL AND PARTIAL DISMISSAL _____** |
| **Defendants.** | |

Plaintiff Fatima Warren ("Warren"), through counsel, in response to the Joint Motion For Dismissal and Partial Dismissal filed by Defendants Lexington-Fayette Urban County Government ("LFUCG"), Police Department ("LFUCG Division of Police"), Officer Tyler Chelf ("Officer Chelf"), and Officer Brian Voll ("Officer Voll"), respectfully states as follows:

## RELEVANT FACTUAL BACKGROUND

The Plaintiff  Fatima Warren is a fit, 41-year-old black woman who is a professional Speech Language Pathologist at Cardinal Hill – Lexington's premier rehabilitation center. Warren is also a mother.  She has no criminal record and is not a violent person.  She is an active member of the community –Warren is involved with her son's sporting activities, and is a member of her son's school's Site Based Decision-Making Board.  She is an up-standing and well-respected member of the Lexington community.  First Amended Complaint, ¶ 11.

On or about November 21, 2015 at approximately 2:30 am, Warren arrived at Platinum Dolls on New Circle Road located in Lexington, Kentucky with a group of friends that drove

separately. Warren drove herself, was not intoxicated, and did not consume any alcohol while she was on the Platinum Dolls premises as "last call" had already occurred. Id. at ¶¶ 12-13. After several minutes of enjoying the company of her friends at their table, Warren was approached by Jeffery Melendy ("Melendy") and two other Platinum Security guards ("John Doe I" and "John Doe II"), all three of whom are white, male, and substantially larger than Warren. The confrontation was neither violent nor out-of-control. Without consent or warning, Melendy assaulted Warren by abruptly and intentionally placing her in a "full nelson" hold while the two other large guards, John Doe I and John Doe II, lifted her into the air by her legs and forcibly carried her away from her table and friends. She was then violently hurled out of the premises and into the parking lot, where she landed face down on the pavement. Id. at ¶¶ 14-16. As a result of this assault, Ms. Warren suffered extensive and visible abrasions on her arms and legs. Id. at ¶ 17.

Warren thereafter dialed 911 to report the physical assault and to request police assistance. Two police officers – Officer Voll and Officer Chelf arrived on the scene and only Officer Voll asked Warren what happened. She explained that she had been forcibly removed from Platinum Dolls and that she had been injured as a result of the assault upon her person by the Platinum security personnel. Neither Officer Voll nor Officer Chelf asked Warren any follow-up questions. Neither Officer asked her whether she had been drinking, and both failed to perform a field sobriety test or any other intoxication assessment. There was also no alcohol on Warren's person or in the area where she encountered Officers Voll and Chelf in the parking lot outside the Platinum Dolls establishment. Id. at ¶¶ 18-20.

Either Officer Chelf or Officer Voll went to the front door of Platinum Dolls to speak with Platinum Dolls security personnel comprised of Melendy, John Doe I, and John Doe II.

Either Officer Chelf or Officer Voll then entered Platinum Dolls with one or more employees. After exiting Platinum Dolls, Officer Voll and Officer Chelf conferred and jointly made the decision to arrest Warren. Officer Chelf walked over to Warren, took out his handcuffs, and informed Warren that she was being arrested. No other communication was made by Officer Chelf or Officer Voll except for the declaration of arrest when Warren asked why she was being arrested. Warren allowed herself to be put into handcuffs and complied with each Officer's instructions in getting inside Officer Chelf's police vehicle. Only after pulling away from Platinum Dolls did Officer Chelf inform Warren that she had been arrested for public intoxication. Id. at ¶¶ 21-27.

Officer Chelf is listed on the citation as the arresting officer; however Officer Voll later prepared the Case Report. The Case Report later prepared by Officer Voll lists Jeffrey Melendy, one of the security guards who assaulted Warren, as the victim of a 4th degree assault by Warren. The supposed victim, Melendy, told Officer Voll that after he put his hand (without permission) on Warren's back in an attempt to escort her from the club she reacted by "hitting him in the head and causing a small welt." Mr. Melendy told Officer Voll that in response he put Warren in a "full nelson" and forcibly removed her from Platinum. There is no discussion in Case Report of the foregoing incident being alcohol-related, or any allegation that Warren was intoxicated. The Case Report specifically states, in fact, that the incident was not alcohol or drug-related. The Case Report further states that Ms. Warren requested "EC" (emergency care) because of neck pain, and that Officer Voll went inside Platinum "as EC was arriving" to view the Surveillance Video allegedly supporting Melendy's version of events. The report states that when Officer Voll exited Platinum, Warren "had been evaluated by EC and had refused transportation to the hospital." In fact, no emergency care ever arrived on the scene, Warren

was never asked whether she would like to receive medical attention, and Warren did not refuse transportation to the hospital. Furthermore, upon information and belief, the Case Report prepared by Officer Voll wrongfully lists Officer Voll as the Officer that entered Platinum Dolls to view the Surveillance Video. Id. at ¶¶ 28-30.

Warren, who has never been arrested and has no criminal record, spent 8 hours in jail before bailing herself out. After she was released from jail, Warren went directly to the hospital, where she was treated for her injuries. While at the hospital, Ms. Warren again called the police to report the physical assault she suffered at the hands of Platinum employees. Officer Mounce of the LFUCG police department arrived at the hospital to take the report. The report taken by Officer Mounce states that he observed visible bruising on both of Ms. Warren's wrists, and that she complained of pain to her knees, back, head, and neck. Id. at ¶¶ 31-32.

The charge against Warren for Public Intoxication was later dismissed - there is no evidence even demonstrating the existence of probable cause to arrest her on a charge of public intoxication. Id. at ¶ 33.

## ARGUMENT

### I.     THE COMPLAINT SATISFIES RULE 12(b)(6).

In assessing a motion brought pursuant to Rule 12(b)(6), the Court must presume all well-pleaded factual allegations in the complaint to be true and draw all reasonable inferences from those allegations in favor of the non-moving party. Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claims showing that the pleader is entitled to relief. The pleading standard in Rule 8(a)(2) does not require detailed factual allegations, but "demands more than an unadorned, the defendant-unlawfully-harmed me accusation." Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  A

Court "will sustain a motion to dismiss pursuant to Rule 12(b)(6) <u>only</u> in cases where there are

simply not 'enough facts to state a claim to relief that is <u>plausible</u> on its face.'"  <u>McCarty v. Arch</u>

<u>Wood Prot., Inc.</u>, 2012 U.S. Dist. LEXIS 83150, at *5 (E.D. Ky. June 14, 2012) (emphasis

added) (quoting <u>Twombly</u>, 550 U.S. at 569 ).   To state a valid claim,  a complaint must contain

either direct or inferential allegations respecting all the material elements to sustain recovery

under some viable legal theory. <u>Twombly</u>, 550 U.S. at 562.

## II.     WARREN HAS FILED AN AMENDED COMPLAINT THAT ASSERTS CLAIMS AGAINST LEXINGTON FAYETTE URBAN COUNTY GOVERNMENT.

The first ground for relief asserted by Defendants the City of Lexington and LFUCG

Police Department is that the City of Lexington is not a proper Defendant as it does not exist as

an independent legal entity following its merger with Fayette County.   Defendants also argue

that the LFUCG Police Department is not an independent suable entity that exists apart from

LFUCG.  Warren has, this day, filed a timely First Amended Complaint asserting claims against

Lexington Fayette Urban County Government ("LFUCG") and dropping the City of Lexington

and the LFUCG Police Department as separately named Defendants.  As such, any pleading

deficiency regarding correctly naming the parties has been cured.

## III.    THE FIRST AMENDED COMPLAINT SUFFICIENTLY ALLEGES SPECIFIC POLICIES AND PROCEDURES TO SUPPORT PLAINTIFF'S CLAIMS FOR MUNICIPAL LIABILITY.

Defendants move to dismiss the Plaintiff's municipal and official capacity claims on the

grounds that the Plaintiff has not sufficiently identified an unconstitutional policy, established

governmental responsibility for the policy, or established a causal connection between the policy

and the alleged harm.  To the extent that any deficiency existed with respect to these claims in

Plaintiff's Complaint, the First Amended Complaint filed by Plaintiff this day cures those

deficiencies by specifically describing the policies instituted by the LFUCG that led to the

unlawful arrest and detention of Warren.  Plaintiff has specifically alleged as follows:

> "The failure of the Defendant LFUCG to properly train, supervise,
> and control their employees amounted to a deliberate indifference
> to the rights of the citizens of Lexington, thereby creating and
> establishing unconstitutional policies and customs that caused,
> contributed to, allowed, encouraged, or endangered the safety and
> constitutional rights of Warren." First Amended Complaint, ¶ 42.

> "Specifically, LFUCG has instituted a policy or policies that
> permit its Officers to arrest individuals for the offense of public
> intoxication without requiring any evidence of intoxication.
> LFUCG does not require Officers to test suspects for intoxication
> with field sobriety, breathalyzer, or other objective tests, and does
> not require any evidence of intoxication such as the presence of
> intoxication-inducing substances on the scene of an arrest or the
> smell of intoxicating substances on the breath of a suspect prior to
> arresting a suspect for public intoxication.  As a result, numerous
> wrongful arrests for public intoxication are made by LFUCG
> Officers each year.  LFUCG is aware of this fact, but continues to
> maintain the aforementioned policies and to train its Officers,
> including Officers Voll and Chelf, in accordance with these
> policies.  This conduct amounts to a deliberate indifference to the
> rights of the citizens of Lexington, thereby creating and
> establishing unconstitutional policies and customs that caused,
> contributed to, allowed, encouraged, or endangered the safety and
> constitutional rights of Warren." Id. at ¶ 43.

> "Warren was not required to perform any field sobriety,
> breathalyzer, or other objective tests, and there was no evidence of
> intoxication such as the presence of intoxication-inducing
> substances on the scene of her arrest or the smell of intoxicating
> substances on her breath.  LFUCG policies and practices
> permitting an arrest of a suspect for public intoxication in the
> absence of any evidence supporting the conclusion that public
> intoxication indeed was present therefore directly caused and led to
> the violation of Warren's constitutional rights."  Id. at ¶ 44.

The cases cited by Defendants are therefore readily distinguishable, because here Plaintiff

has identified the policy, connected the policy to the city itself and shown that her particular

injury was incurred because of the execution of that policy.  Municipalities are "persons" subject

to suit under 42 U.S.C. § 1983, and are liable if the "execution of a government policy or

custom... inflicts the injury..." complained of by the plaintiff. See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 694 (1978). In Coogan v. City of Wixom, 820 F.2d 170 (6th Cir. 1987), the Sixth Circuit held that the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." Id. at 176. Plaintiff's First Amended Complaint satisfies this standard.

## IV.    OFFICER VOLL SHOULD NOT BE DISMISSED AS A DEFENDANT IN HIS INDIVIDUAL CAPACITY.

Defendants further argue that the claims asserted against Officer Voll in his individual capacity should be dismissed because the Plaintiff did not assert any specific facts alleging Officer Voll's involvement in the wrongful arrest at issue. The Plaintiff has, this day, filed an Amended Complaint alleging specific facts against Officer Voll that implicate Officer Voll in the wrongful arrest. Specifically, Plaintiff has alleged that Officers Voll and Chelf arrived on the scene together (First Amended Complaint, ¶ 19), that neither Officer Neither Officer Voll nor Officer Chelf asked Warren any follow-up questions, including whether she had been drinking, and that both failed to perform a field sobriety test or any other intoxication assessment. Id. at ¶ 20. Warren has alleged that Officer Voll and Officer Chelf conferred and jointly made the decision to arrest Warren. Id. at ¶23. Warren has also alleged that while Officer Chelf is listed on the citation as the arresting officer, Officer Voll later prepared the Case Report. Id. at ¶28. There is no discussion in Case Report prepared by Officer Voll of the foregoing incident being alcohol-related, or any allegation that Warren was intoxicated. The Case Report specifically states, in fact, that the incident was not alcohol or drug-related. Id. at ¶29. Plaintiff has further alleged that the Case Report further states that Ms. Warren requested "EC" (emergency care) because of neck pain, and that Officer Voll went inside Platinum "as EC was arriving" to view the Surveillance Video allegedly supporting Melendy's version of events. The report states that

when Officer Voll exited Platinum, Warren "had been evaluated by EC and had refused transportation to the hospital."   In fact, no emergency care ever arrived on the scene, Warren was never asked whether she would like to receive medical attention, and Warren did not refuse transportation to the hospital.  Furthermore, upon information and belief, the Case Report prepared by Officer Voll wrongfully lists Officer Voll as the Officer that entered Platinum Dolls to view the Surveillance Video.  Id. at ¶30.

Finally, the Counts against Officers Voll and Chelf in Plaintiff's First Amended Complaint allege that the Officers acted jointly and in concert in violating Plaintiff's Fourth Amendment rights and in making the decision to wrongfully arrest and detain her, and Plaintiff seeks joint and several liability and relief with regard to each cause of action.  As a result, dismissal of the claims asserted against Officer Voll in his individual capacity is not appropriate under the governing legal standard. See Iqbal, supra, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

## V.  DISMISSAL OF THE PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM IS PREMATURE.

Defendants move to dismiss Plaintiff's intentional infliction of emotional distress ("IIED") claim on the grounds that the Kentucky Supreme Court has held that a plaintiff cannot recover under both an IIED and traditional tort claim on the same set of facts.  See, e.g. Childers v. Geile, 367 S.W.3d 576, 582-83 (Ky. 2012). A plaintiff can, however, plead an IIED claim in the alternative to a traditional tort claim. Id. at 582.  The Kentucky Court of Appeals has held that "where an actor's conduct amounts to the commission of one of the traditional torts . . . for which the recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie. Recovery for

emotional distress  in those instances must be had under the appropriate traditional common law action."  <u>Rigazio v. Archdiocese of Louisville</u>, 853 S.W.2d 295, 299 (Ky. App. 1993).

In <u>Rigazio</u>, the Court of Appeals found dismissal of the IIED claim appropriate because there was no "evidence from which it could be inferred that [the defendant] intended only to invade [the Plaintiff's] interest in freedom from emotional distress." <u>Id.</u> at 299. Here, there is no evidence yet before the Court. Accordingly, the dismissal of the IIED charge is premature. <u>See</u> <u>Kustes v. Lexington-Fayette Urban County Gov't,</u> 2013 U.S. Dist. LEXIS 125763 at *7 (E.D. Ky. Sept. 3, 2013)(denying Motion to dismiss IIED claim as premature where there was no evidence before the Court regarding the defendant's intentions).

## VI.    <u>PLAINTIFF IS ENTITLED TO PLEAD HER CLAIMS IN THE ALTERNATIVE.</u>

Defendants further argue that Plaintiff's negligence claims should be dismissed because the factual allegations set forth in the Complaint sound in intentional tort and cannot therefore adequately assert a claim sounding in negligence.   It is axiomatic, however, that a complaint may assert alternative or inconsistent theories and claims. Fed. R. Civ. Proc. 8; <u>Kentucky Home Mut. Life Ins. Co. v. Duling,</u> 190 F.2d 797, 801 (6th Cir. 1951); <u>Smith v. Isaacs,</u> 777 S.W.2d 912 (Ky. 1989). Civil Rule 8(d) accounts for this very principle stating: "(d) Pleading to Be Concise and Direct; Alternative Statements; Inconsistency. * * * (3) Inconsistent Claims or Defenses. A party may state as many separate claims or defenses as it has, regardless of consistency."  Thus, Defendants' motion for dismissal of the negligence claims at issue is without merit.  Plaintiff has the right to argue various seemingly inconsistent theories and claims without fear of dismissal. Furthermore, the case cited by Defendants in support of its motion to dismiss Plaintiff's negligence claims is inapplicable. That case, <u>Dumerov v. University of Kentucky,</u>

2013 WL 488976 (E.D. Ky. 2013) involved an excessive force claim – a claim that is not at issue here. Rather the present case involves improper, unlawful arrest due to lack of probable cause. Here, alternative pleading is clearly permissible and the Court should deny Defendants' motion to dismiss Plaintiff's negligence claims.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests the Court to deny Defendants'' Motion to Dismiss and permit her claims as asserted in the First Amended Complaint filed in the record of this action to proceed accordingly.

Respectfully submitted,


 /s/ Jessica K. Winters

Jessica K. Winters
421 W. Second St.
Lexington, KY 40507
Phone: (859) 619-2134
Email: jessica@jessicawinterslaw.com

## CERTIFICATE OF SERVICE

I hereby certify on the 16th day of June, 2016, I electronically filed the Response to Joint Motion For Dismissal and Partial Dismissal with the clerk of the court using the CM/ECF system, which will send a notice of electronic filing to counsel of record.


_/s/ Jessica K. Winters_____

Jessica Winters