UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| FATIMA WARREN, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5: 16-140-DCR |
| ) | |
| V. ) | |
| ) | |
| LEXINGTON-FAYETTE URBAN ) | **MEMORANDUM OPINION** |
| COUNTY GOVERNMENT POLICE ) | **AND ORDER** |
| DEPARTMENT, et al., ) | |
| ) | |
| Defendants. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of the Defendants Officer Tyler Chelf's ("Officer Chelf") and the Lexington-Fayette Urban County Government's ("LFUCG"), joint motion for summary judgment. [Record No. 70] For the following reasons, the defendants' motion will be granted.

I.

Plaintiff Fatima Warren arrived at the Platinum Dolls gentlemen's club at approximately 2:30 a.m. on November 21, 2015, and got a table with some friends. [Record No. 80, Ex. 1, p. 29] Warren had consumed around two drinks before arriving at the gentlemen's club, but she asserts that she was not intoxicated at the time of arrival and did not consume alcohol while there. [*Id.* at 88-90] She claims to have been dancing beside the table and, because it was warm in the club, had removed her outer layers of clothing. [*Id.* at 30] However, a security guard advised Warren that she was not permitted to dance. [*Id.* at 31] Warren allegedly complied and took at seat with her friends. [*Id.*]

-1-

Problems began when Warren later stood up to put on her warmer clothes. [*Id*. at 31-32] While Warren was bending over to pick up her shirt, security guard Jeff Melendy came over and placed his hand on the small of her back. [*Id*.; Record No. 70, Ex. 3, p. 6] Warren asked Melendy to remove his hand but he responded that the plaintiff had been told that if she did not stop dancing, she would be removed from the club.[1] [Record No. 81, Ex. 1, p. 32] The situation escalated. Warren continued to try to put on her shirt, but Melendy picked up and forcibly removed the plaintiff from the building with the assistance of other individuals. [*Id*. at 32-33]

According to Melendy, as he was carrying Warren out of the building, Warren slammed her cell phone into the side of his head, and continued to try and hit him as they were moving toward the exit. [Record No. 70, Ex. 3, p. 6] Surveillance video depicts Warren flailing her arms and struggling as she is carried out of the building; however, it is unclear from the video whether Warren actually struck Melendy with her cell phone. [Record No. 70, Ex. 4] Warren maintains that she did not assault Melendy. [Record No. 81, Ex. 1, p. 85] For purposes of this motion, the Court will accept Warren's version of events.

Warren claims that she was removed from the gentlemen's club and tossed into the parking lot. [*Id*. at 39] She alleges that she then asked why she had been treated in this manner.

---

[1] Warren made this statement during a deposition taken on December 22, 2016. [Record No. 81, Ex. 1] She later filed an affidavit on May 5, 2017, that contradicted this statement and others from her deposition testimony. [Record No. 82, Ex. 1] Specifically, Warren claims in the subsequent affidavit that she chose to leave the club voluntarily and that club personnel never asked her to leave the club or the parking lot after she had been removed from the premises. [*Id*.] However, "after a motion for summary judgment has been made, a party may not file an affidavit that contradicts her sworn testimony." *France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016). Accordingly, the Court will disregard the inconsistent statements from Warren's affidavit.

[*Id.*] An individual who identified himself as the owner responded, "if you don't get away from here, we're going to call the police." [*Id.* at 40] Warren then moved to a wall approximately 15 to 20 feet from the door and sat down call the police. [*Id.* at 40-41] One of Warren's friends suggested that she leave but she declined and, instead, insisted on waiting for police to arrive. [*Id.*]

An ambulance arrived at the scene in response to a report of a female with minor injuries after having been ejected by club bouncers. [Record No. 82, Ex. 7] Kenneth Howell, the Emergency Medical Technician ("EMT") who responded to the call, and James Praria, a paramedic who also responded to the call, stated that when they arrived, Warren was sitting on a concrete wall speaking with a law enforcement officer. [Record No. 82, Ex. 6, p. 14; Record No. 82, p. 35] Howell reported that Warren was irritated, but alert and oriented. Further, her behavior did not suggest that she was intoxicated. [Record No. 82, Ex. 6, p. 17] Howell could not recall whether Warren smelled of alcohol, had bloodshot eyes, or slurred speech. [*Id.* at 16]

According to the emergency crew's report, the EMTs attempted to gather more information regarding Warren's alleged injuries but she refused to answer their questions. [Record No. 82, Ex. 7] Praria attempted to speak with Warren but she was "preoccupied" with law enforcement. [Record No. 82, Ex. 6, p. 22] The report states that Warren would not cooperate with the crew. [*Id.*] Warren directed the EMTs to leave after they had been on scene for approximately ten minutes. [*Id.*]

Defendant Chelf was dispatched to Platinum Dolls in response to the disorder at approximately 3:54 a.m.. [Record No. 82, Ex. 2] Another officer was speaking to Warren and EMTs were on scene at the time of Chelf's arrival. [Record No. 82, Ex. 9, p. 5] Chelf was

able to hear Warren speaking to the other officer and noticed that her tone was agitated, belligerent, and argumentative. [*Id*. at 10] Chelf approached several bouncers standing outside the club and asked about the incident. [*Id*.] The bouncers accompanied Chelf inside the establishment and allowed him to view the surveillance video. [*Id*.] The bouncers reported that they had informed Warren that she was violating their rules, but she had continued to disregard their requests. [*Id*.] The bouncers reported to Chelf that then asked Warren to leave, but she refused. [*Id*.] Chelf stated that it was his understanding Warren had been asked to leave after she called 911 from the parking lot. [*Id*. at 14]

Melendy reported to Chelf that he attempted to escort Warren out of the building by placing his hand on the small of her back, but that a physical altercation ensued when she would not leave. [*Id*. at 5-6; *see also* Record No. 82, Ex. 9, p. 8] Chelf observed a small cut on Melendy's forehead, which (according to Melendy) resulted from Warren striking him on the head with her cell phone. [Record No. 82, Ex. 9, p. 8] Chelf examined the surveillance video which he described as "appear[ing] to depict exactly what they said, that they asked her to leave a couple times, she refused" and a "physical confrontation ensued which ended up with her being picked up and taken outside of the club." [*Id*.]

Chelf then spoke with Warren outside the gentlemen's club. [*Id*.] He reported Warren to be belligerent and argumentative during their interaction and that she was verbally combative and "acting irrationally with her speech" in that she was unable to describe the incident. [*Id*. at 15] Warren generally did not cooperate with law enforcement, refused treatment, and refused to be transported to the hospital for any alleged injuries. [*Id*. at 6-7] Chelf then arrested Warren for alcohol intoxication in a public place after determining: (i) Warren was manifestly under the influence of alcohol; (ii) he smelled alcohol on her breath;

(iii) Warren was agitated and had been in a physical altercation in which she struck someone on the head with a cell phone; and (iv) Warren was uncooperative with officers. [*Id*. at 7-8] Additionally, despite Warren having called 911 to report an assault, she was unable to articulate what had occurred that caused her to place the call. [*Id*. at 10] Chelf then transported Warren to the Fayette Detention Center where she was held for approximately seven hours before being released. [*Id*. at 65] The charges against Warren were ultimately dismissed.

Warren filed this action on May 10, 2016, asserting claims against private parties, the officers, and municipal entities. [Record No. 1] She has since filed an Amended Complaint that names Chelf in his individual capacity and the Lexington-Fayette Urban County Government as defendants. [Record No. 60] Warren raises a § 1983 claim against both defendants, alleging a Fourth Amendment violation, and state law claims for false imprisonment and abuse of process against Chelf. The defendants have moved for summary judgment on all claims asserted against them. [Record No. 70] They have also moved to exclude expert testimony. [Record No. 74]

## II.

Summary judgment is appropriate when there are no genuine issues regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). *See also Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

A party moving for summary judgment bears the burden of demonstrating conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Once the moving party has met his burden of production, the nonmoving party must come forward with significant probative evidence to defeat a properly supported motion for summary judgment. *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). In deciding whether to grant summary judgment, the Court views all facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A. Officer Chelf

*1. Section 1983 Claim*

A plaintiff may recover under 42 U.S.C. § 1983 where a person acting under color of state law deprived him or her of a right secured by the Constitution or the laws of the United States. *Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009) (citation omitted). Here, Warren asserts a claim under § 1983 based on allegations that Chelf deprived her of her the right to be free from unreasonable seizures by arresting her without probable cause. Chelf responds that he is not liable under § 1983 because he is entitled to qualified immunity for actions related to Warren's arrest.

A government official performing a discretionary function is entitled to qualified immunity and is shielded from civil liability if his conduct does not violate clearly-established constitutional rights of which a reasonable person would have known. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity applies to objectively reasonable mistakes and "protects all but the plainly incompetent or those who knowingly violate the law." *Humphrey v. Mabry*, 482 F.3d 841, 847 (6th Cir. 2007) (citation omitted); *see also*

*Pearson*, 555 U.S. at 231. Specifically, it protects government officials from civil liability for a § 1983 claim if (1) the official did not violate any constitutional guarantee or (2) the guarantee, even if violated, was not "clearly-established" at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232.

A right is clearly-established where "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007). It is not necessary for there to have been a case "directly on point for a right to be clearly established," but "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S.Ct. 548, 551 (2017) (internal quotation marks and citations omitted). Clearly-established law cannot be defined "at a high level of generality" but must, instead, be "particularized to the facts of the case." *Id*. at 552 (internal quotation marks and citations omitted). Accordingly, an officer is entitled to qualified immunity unless the plaintiff identifies an existing case where "an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *Id*.

A plaintiff cannot maintain a § 1983 claim of unlawful arrest in violation of the Fourth Amendment unless the plaintiff demonstrates that the officer lacked probable cause to arrest her. *See Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010). An officer has probable cause where the facts and circumstances within his knowledge were "sufficient to warrant a man of reasonable caution to believe that an offense had been, was being, or was about to be committed." *Fox v. Desoto*, 489 F.3d 227, 236 (6th Cir. 2007). The probable cause analysis is based on the totality of the circumstances and requires "only the probability, and not a prima

facie showing, of criminal activity." *Legenzoff v. Steckel*, 564 F. App'x 136, 142 (6th Cir. 2014) (citation omitted).

Warren argues that Chelf did not have probable cause to arrest her for alcohol intoxication in a public place in violation of KRS 222.202(1). However, even if he did not have probable cause to arrest Warren for this reason, his conduct was proper because Chelf had probable cause to arrest Warren for trespassing. Under *Devenpeck v. Alford*, 543 U.S. 146, 153, 154 (2004), there is no requirement "that the offense establishing probable cause [] be 'closely related' to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest." Instead, an arrest is proper as long as the facts known to the officer at the time of arrest establish probable cause to believe that the individual was committing an offense. *Id*. It is irrelevant whether the officer had probable cause to arrest for the specific offense that he identifies as the basis for the arrest at the time of the incident. *Id*. Accordingly, Chelf did not need to have probable cause to arrest Warren for the offense that he stated at the time of the arrest, alcohol intoxication in a public place. Instead, the arrest complied with the Fourth Amendment as long as Chelf had probable cause to arrest her for an offense—here, criminal trespassing.

Under Kentucky law, "[a] person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in or upon premises." KRS 511.080. "A person 'enters or remains unlawfully' in or upon premises when he is not privileged or licensed to do so." KRS 511.090(1). A person is no longer privileged or licensed to remain on premises when "he defies a lawful order not to . . . remain [on the premises] personally communicated to him by the owner of such premises or other authorized person." KRS 511.090(2).

Because criminal trespass is a misdemeanor, an officer cannot conduct a warrantless arrest for this offense unless it occurs in his presence. KRS 431.005(1)(d). The standard for whether a warrantless arrest for a misdemeanor is proper is whether "a reasonable officer could conclude from all the facts and circumstances that a violation was being committed in his presence." *Commonwealth v. Fields*, 194 S.W.3d 255, 257 (Ky. 2006). Courts "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Commonwealth v. Mobley*, 160 S.W.3d 783, 786 (Ky. 2005) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

In this case, based on the undisputed facts available to Chelf, it would have been reasonable to conclude that Warren was committing a criminal trespass in his presence. Warren remained in the Platinum Dolls parking lot after having been removed from the club and told to leave the premises. Therefore, she no longer had license to be there. Melendy informed Chelf that he and his employees had told Warren to leave the club, but she refused, requiring them to forcibly remove her. [Record No. 82, Ex. 9, p. 10] Warren remained in the parking lot after having been ejected from the club and told to leave the premises. [*Id*. at 14] Chelf viewed the video surveillance that was consistent with and supported Melendy's description of the incident. [Record No. 70, Ex. 4] The video provided additional support for Melendy's version of the events. Further, Warren confirmed in her deposition testimony that the club's employees had told her to leave the club and later told her to leave the premises after she had been removed to the parking lot. [Record No. 81, Ex. 1, p. 32, 40] Accordingly, the facts available to Chelf at the time of the arrest established that Warren had been told to leave

but refused to do so. Instead, Warren remained on the premises without license or authority. These facts established probable cause to arrest for criminal trespass.

Warren argues that she did not commit a criminal trespass in Chelf's presence because he did not personally observe the club employees order her to leave the premises. However, she does not cite authority for this argument and there is no indication that Kentucky requires an officer to be physically present for every aspect of an incident. In any event, any state law requirement that "a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest . . . is not mandated by the Fourth Amendment." *Graves v. Mahoning County*, 821 F.3d 772, 778 (6th Cir. 2016) (internal quotation marks and citation omitted). Accordingly, even if the misdemeanor did not occur in Chelf's presence, this has no bearing on whether the arrest complied with the Fourth Amendment.

Warren also argues that Chelf did not have probable cause to arrest her because he was not permitted to rely on Melendy's statements that he and other employees had directed Warren to leave. She cites a statement from the Sixth Circuit that "an officer cannot look only at the evidence of guilt while ignoring all exculpatory evidence." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000).

As an initial matter, it is unclear what "exculpatory evidence" Officer Chelf should have considered. Warren acknowledged in her deposition that Melendy had asked her to leave the club – and then to leave the premises – after she had been ejected, thereby confirming that she was no longer licensed to remain on the property. [Record No. 81, Ex. 1, p. 32, 40] Even assuming that Chelf acted improperly by not obtaining further information from Warren, her statement would not have affected the probable cause assessment: her version of events would still have given Chelf reason to believe that she was trespassing.

Further, a law enforcement officer is entitled to rely on an eyewitness statement "unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation." *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (internal quotation marks omitted). Melendy's statement established probable cause and Warren has not identified any reason that Chelf should have considered it untrustworthy at the time of the arrest. Instead, Chelf had reason to trust the statement because it was consistent with the surveillance video of the incident. Thus, Warren's argument that it was improper for Chelf to rely on Melendy's statement fails.[2]

For the foregoing reasons, the Court concludes that Chelf had probable cause to conclude that Warren was committing the offense of criminal trespass in his presence. Accordingly, the arrest was proper under the Fourth Amendment and Chelf is entitled to summary judgment on Warren's § 1983 claim.

    *2.    False Imprisonment Claim*

Warren also makes a claim against Chelf for false imprisonment in violation of Kentucky state law. Federal courts apply substantive state law to claims that are before them

---

[2] Warren also relies on *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 305 (6th Cir. 2005), in which the Sixth Circuit stated that an allegation of criminal behavior "is insufficient by itself to establish probable cause that a crime had been committed." However, this case does not "clearly establish" that Officer Chelf acted improperly because it addressed very different circumstances involving a landlord-tenant dispute. Additionally, the Sixth Circuit has recently referenced its conclusion in *Ahlers* that an eyewitness statement established probable cause and that the officer was not required to investigate further once he had the statement. *See Sampson v. Village of Mackinaw City*, No. 16-1919, 2017 WL 1279281, at *5 (6th Cir. April 6, 2017). To the extent that Warren suggests that an eyewitness statement alone can never establish probable cause, she is incorrect because this is not an accurate statement of the law in this circuit.

on supplemental jurisdiction. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938). Federal courts must apply substantive state law in accordance with the state supreme court's controlling decisions. *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys. Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). If the state supreme court has not addressed a particular issue, the federal court must "predict how that court would rule, by looking to all available data." *Whitlock v. FSL Management, LLC*, 843 F.3d 1084, 1089 (6th Cir. 2016) (internal quotation marks and citation omitted). Where a state appellate court has decided an issue, the decision should not be disregarded absent "persuasive data" that the state supreme court would decide the issue differently. *Kingley Assoc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995).

In Kentucky, false imprisonment consists of the intentional confinement of an individual, of which the individual is aware at the time of the confinement. *Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007). An officer who conducts a warrantless arrest is not liable for false imprisonment if the officer had probable cause for the arrest. *Id*. An officer has probable cause to arrest an individual if he has "reasonable grounds for belief of guilt." *Williams v. Commonwealth*, 147 S.W.3d 1, 7 (Ky. 2004).

As discussed above, the facts available to Chelf at the time of arrest established probable cause to believe that Warren was committing a criminal trespass in his presence. The issue is whether Kentucky approaches the probable cause evaluation in the manner announced in *Devenpeck*—that an officer has probable cause to arrest as long as the facts available to him establish probable cause for *any* offense, regardless of whether there is probable cause to arrest for the specific offense that the officer subjectively identified as the reason for the arrest. Although the Supreme Court of Kentucky does not appear to have directly addressed this issue,

the undersigned predicts that Kentucky would adopt the *Devenpeck* holding and conclude that Officer Chelf had probable cause to arrest Warren under the facts of this case.

The Supreme Court of Kentucky consistently holds that the "Kentucky Constitution provides no greater protection that does the Federal Fourth Amendment." *Cobb v. Commonwealth*, 509 S.W.3d 705, 712 (Ky. 2017). Although it has not specifically cited the *Devenpeck* decision, the Supreme Court of Kentucky consistently relies on decisions from the Supreme Court of the United States when evaluating issues under the Kentucky Constitution's equivalent of the Fourth Amendment. *See, e.g.*, *Chavies v. Commonwealth*, 354 S.W.3d 103, 109 (Ky. 2011) (citing *Horton v. California*, 496 U.S. 128 (1990) and reiterating that the Kentucky Constitution does not provide any greater protection that the Fourth Amendment). It is therefore reasonable to predict that the Supreme Court of Kentucky would also conclude that an officer has probable cause to arrest as long as he has probable cause arrest for any offense, consistent with *Devenpeck*.

Further, the Supreme Court of Kentucky has adopted the reasoning on which *Devenpeck* is based. In *Devenpeck*, the Court relied on the established principle that "an arresting officer's state of mind . . . is irrelevant to the existence of probable cause." *Id.* (citing *Whren v. United States*, 517 U.S. 806, 812-13 (1996)). As a result, the officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id.* at 594. Stated differently, if the objective facts available to the officer establish probable cause, his subjective reasons for making the arrest are irrelevant. Kentucky courts have also adopted the principle that an officer's subjective intention is irrelevant to the probable cause determination. *See Wilson v. Commonwealth*, 37 S.W.3d 745, 749 (Ky. 2001) (citing *Whren v. United States*, 517 U.S. 806 (1996)). It is thus likely that

Kentucky courts would also agree with the Supreme Court of the United States that the probable cause assessment is an objective one based on the facts available to the officer, rather than on the officer's subjective reasons for conducting an arrest.

Finally, the Court of Appeals of Kentucky has followed the Supreme Court's holding in *Devenpeck*. In *Parker v. Commonwealth*, No. 2005-CA-001737-MR, 2006 WL 2034227 (Ky. Ct. App. July 21, 2006), the appellate court cited the holding in *Devenpeck* that "the arresting officer's subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id*. at *5. It then concluded, based on this decision, that a defendant's detention was proper because the facts known to the officers established probable cause to arrest him for criminal trespass. *Id*.

Based on the foregoing authorities, the Supreme Court of Kentucky would likely adopt the Supreme Court's holding in *Devenpeck*. Accordingly, the probable cause assessment is an objective one based on whether the facts available to the officer establish probable cause to arrest for an offense, regardless of which offense the officer subjectively intended as the basis for the arrest. Because the facts available to Chelf established probable cause to arrest Warren for criminal trespass, Warren's arrest was supported by probable cause and Chelf is entitled to summary judgment regarding the false imprisonment claim.

3. *Abuse of Process Claim*

The basis for Warren's abuse of process claim is her allegation that Chelf arrested her without probable cause and based on an "undisclosed animus."[3] An action for abuse of process

---

[3] Warren had alleged that Chelf conspired with the prosecuting attorney to dismiss the charges against her without prejudice rather than with prejudice. She concedes, however, that she lacks factual support for this allegation. Warren does not challenge the summary judgment motion on this basis.

is "the irregular or wrongful employment of a judicial proceeding" and has two essential elements: "1) an ulterior purpose, and 2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Sprint Communications Co., L.P. v. Leggett*, 307 S.W.3d 109, 114 (Ky. 2010) (citation omitted). "There is no liability where the defendant . . . has done nothing more than carry out the process to its authorized conclusion." *Id*. at 113.

To survive the motion for summary judgment, Warren must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id*. at 587 (internal quotation marks and citation omitted).

Warren has not identified any specific facts that would demonstrate that there is a genuine issue for trial. The record provides no basis to conclude that Chelf had any involvement with the prosecution. Additionally, there is no indication that Chelf acted with an ulterior purpose at any point during the proceeding. This is particularly true because, as stated above, Chelf had probable cause to arrest Warren. Rather than presenting the Court with specific facts, Warren asks this Court to speculate that Chelf acted with "undisclosed animus" based on the fact that he first spoke with club employees rather than with Warren and that he arrested Warren without obtaining her version of the incident. But this is insufficient to present a genuine issue of material fact that would justify a trial. Accordingly, Warren has failed to demonstrate a genuine issue of material fact and Chelf is entitled to summary judgment on Warren's abuse of process claim.

## B. LFUCG

Warren has also filed a claim against Defendant LFUCG for a Fourth Amendment violation under § 1983, arguing that the urban county government has failed to adequately train its law enforcement officers. A plaintiff wishing to maintain a § 1983 claim against a municipal entity must show that her constitutional rights were violated and that the municipal entity's policy or custom was the "moving force" behind the deprivation. *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 606-07 (6th Cir. 2007) (citation omitted).

A municipal entity may be liable for a systematic failure to train its police officers. *Miller v. Sanilac County*, 606 F.3d 240, 255 (6th Cir. 2010) (citation omitted). However, "[t]he inadequacy of police training only serves as a basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008) (internal quotation marks and citation omitted). Establishing deliberate indifference requires the plaintiff to "show prior instances of unconstitutional conduct demonstrating that the [municipal entity] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005).

Warren fails to present the requisite specific facts to support her municipal liability claim. First, as stated above, there was no constitutional deprivation because there was probable cause to support Warren's arrest. Second, even if there was a constitutional deprivation, Warren fails to make the necessary showing of deliberate indifference. Warren has presented no proof of a history of unlawful arrests for alcohol intoxication in a public place.

Warren also fails to provide specific facts showing that LFUCG's officer training methods are inadequate. She primarily focuses on the fact that LFUCG does not require its officers to conduct field sobriety tests or other objective tests before conducting an arrest for public intoxication. [*See* Record No. 70, Ex. 7, p. 4] However, she cites no support for her suggestion that an enforcement officer is only permitted to arrest an individual for public intoxication after first conducting an objective sobriety test. To the contrary, probable cause is "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Williams v. Commonwealth*, 147 S.W.3d 1, 7 (Ky. 2004) (quoting *Maryland v. Pringle*, 540 U.S. 366 (2003)).

The strict approach to public intoxication arrests that Warren endorses is not appropriate for the variable and fact-specific nature of the probable cause inquiry. While LFUCG does require evidence of intoxication, the assessment is made based on the totality "of all the information presented and available to the officer" rather than on inflexible procedures. [Record No. 70, Ex. 7, p. 3] LFUCG's requirements for public intoxication arrests comply with the Fourth Amendment.

In summary, Warren has failed to present specific facts that she was deprived of a constitutional right or that the alleged deprivation was caused by a municipal action. Specifically, she has not offered specific facts demonstrating a history of unlawful public intoxication arrests or relevant proof that LFUCG has failed to adequately train its officers. Accordingly, LFUCG is entitled to summary judgment on the claim that Warren has asserted against it.

### III.

For the foregoing reasons, it is hereby

**ORDERED** as follows:

1. The defendants' motion for summary judgment [Record No. 70] is **GRANTED**.

2. The defendants' motion *in limine* [Record No. 74] is **DENIED**, as moot.

3. This action is **DISMISSED**, with prejudice, and **STRICKEN** from the Court's docket. A corresponding judgment will be entered this date.

This 6th day of July, 2017.

Signed By:
*Danny C. Reeves* DCR
United States District Judge